# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ‖ | |
| Plaintiff, | ‖ | No. 18-CR-54-LRR |
| vs. | ‖ | **ORDER** |
| JEREMIAS SANCHEZ-VELASCO, | ‖ | |
| Defendant. | ‖ | |

_____

## TABLE OF CONTENTS

I.   INTRODUCTION..................................................................................*1*

II.  RELEVANT PROCEDURAL BACKGROUND.…………………………….*2*

III. STANDARD OF REVIEW…………………………………………………….*2*

IV.  RELEVANT FACTUAL BACKGROUND…………………………………….*3*

V.   ANALYSIS……………………………………………………………………..*5*
    *A.*    *Consent*……………………………………………………………..*6*
    *B.*    *Custody*……………………………………………………………..*7*
    *C.*    *Miranda Warning*………………………………………………….*12*

VI.  CONCLUSION………………………………………………………………..*14*

## *I. INTRODUCTION*

The matter before the court is Defendant Jeremias Sanchez Velasco's Objections (docket no. 22) to United States Chief Magistrate Judge C.J. Williams's[1] Report and Recommendation (docket no. 16), which recommends that the court deny Defendant's "Motion to Suppress Statements" ("Motion") (docket no. 10).

___

[1] On September 11, 2018, Judge C.J. Williams became a United States District Court Judge for the Northern District of Iowa.

## II. RELEVANT PROCEDURAL BACKGROUND

On June 6, 2018, a grand jury returned an Indictment (docket no. 2) charging Defendant with one count of unlawful use of identification documents, in violation of 18 U.S.C. § 1546(a) and one count of misuse of a social security number, in violation of 42 U.S.C. § 408(a)(7)(B). *See* Indictment at 1-2. On July 10, 2018, Defendant filed the Motion. On July 17, 2018, the government filed a Resistance (docket no. 12). On July 23, 2018, Judge Williams held a hearing ("Hearing") on the Motion. *See* July 23, 2018 Minute Entry (docket no. 14). Defendant appeared in court with his attorney, Rockne Cole. Assistant United States Attorney Patrick Reinart represented the government. On August 1, 2018, Judge Williams issued the Report and Recommendation, which recommends that the court deny the Motion. On August 17, 2018, Defendant filed the Objections.

On August 23, 2018, Defendant entered a conditional plea of guilty to Count 2 of the Indictment. *See* August 23, 2018 Minute Entry (docket no. 24). On August 24, 2018, Judge Williams issued a Report and Recommendation (docket no. 28), which recommended that the court accept Defendant's plea of guilty. On September 10, 2018, the court accepted the August 24, 2018 Report and Recommendation. *See* Order Accepting Conditional Guilty Plea (docket no. 30). The matter is fully submitted and ready for decision.

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting

that a district judge must "undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *See Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

### IV. RELEVANT FACTUAL BACKGROUND[2]

On April 27, 2018, Defendant went to the Linn County Treasurer's Office to register his vehicle and get license plates. Defendant approached one of the public windows inside the Treasurer's Office and spoke with Brynn Love. Love asked Defendant for identification and Defendant provided Love with a Guatemalan identification card. Defendant also gave Love documentation showing proof of car insurance.

Love was unable to find Defendant's name in the Iowa Department of Transportation ("IDOT") database, and asked Defendant for his social security number. Defendant replied that he did not have his social security number and did not know the number from memory. Love looked up the vehicle identification number for Defendant's car, which showed Defendant's wife as the primary owner and Defendant as the secondary owner of the vehicle. The IDOT database also provided the social security number used by Defendant on the vehicle purchase records. Defendant's name in the IDOT database

---

[2] After reviewing the Hearing Transcript (docket no. 26), the court finds that Judge Williams accurately and thoroughly set forth the relevant facts in the Report and Recommendation. *See* Report and Recommendation at 2-4. Therefore, the court shall only briefly summarize the facts here. When relevant, the court relies on and discusses additional facts in conjunction with its legal analysis.

did not match Defendant's name on his insurance documentation. Love inquired about the discrepancy and Defendant stated that the name in the IDOT database was his true name. Love reported the inconsistency to her supervisor.

Love's supervisor directed Love to contact an IDOT investigator to resolve the discrepancy. Love contacted IDOT investigator Jason Nesbaum and explained the situation. While Nesbaum was conducting his investigation into the discrepancy, Defendant told Love that he was going to leave and have his documentation corrected. Love asked Defendant to wait because she was seeking approval to use the identification information he had provided and would have an answer soon as to whether the provided identification was acceptable. Defendant ultimately decided to wait.

Nesbaum contacted Love and informed her that the social security number on file for Defendant did not match Defendant's name and that he had alerted immigration authorities about Defendant. Nesbaum also told Love that he would be coming to the Treasurer's Office to speak with Defendant. Nesbaum asked Love to stall Defendant until he arrived.

Two Immigration and Customs Enforcement ("ICE") Officers, Billy Walker and Bryce Callison, arrived at the Treasurer's Office at approximately 9:00 a.m. The ICE officers were dressed in plain clothes, carried concealed weapons and had no visible badges or other indicia of authority. The ICE officers approached Love's window and asked to speak with Defendant. The ICE officers gathered Defendant's documents from Love and asked her if there was a private space where they could talk with Defendant. Love's supervisor identified a conference room and Officer Walker requested that Defendant accompany them to the conference room. Officer Walker gestured toward the conference room, and using a normal tone of voice, said "please." *See* Hearing Transcript at 49. Neither officer touched Defendant, nor did they identify themselves as immigration

4

or law enforcement officers. Defendant accompanied the ICE officers to the conference room.

After entering the conference room, the ICE officers shut the door. Upon questioning, Defendant admitted that the Guatemalan identification card belonged to him, that he was from Guatemala and that he was in the United States without permission. The ICE officers placed Defendant under arrest for immigration violations. Defendant was arrested at approximately 9:15 a.m. The ICE officers transported Defendant to the ICE office for processing. Officer Callison, who is an ICE deportation officer, and not an ICE criminal investigator, asked Defendant routine biographical questions as part of the ICE administrative processing procedure.

## V. ANALYSIS

In the Motion, Defendant "seeks to suppress statements made to [Officer] Callison on April 27, 2018." Motion at 1. Specifically, Defendant seeks exclusion of the following statements made to Officer Callison: (1) Defendant's statement that "he had purchased the social security number he had been using from someone"; (2) Defendant admitting "during the interview that he was in the country without authorization"; and (3) "any other statements made during the course of the custodial interview." *Id*. at 1-2. Defendant argues that his statements should be suppressed because he "was in custody at the time of his interview" and "a [*Miranda*] warning was [not] given [to him] while [he] was being interviewed." Brief in Support of Motion (docket no. 10-1) at 6-7.

Judge Williams found that Defendant was not in custody while being questioned by the ICE officers in the Treasurer's Office conference room. *See* Report and Recommendation at 5-13. Judge Williams further found that Officer Callison's questions at the ICE office were "properly part of an administrative booking process" and "Officer Callison was not required to advise [D]efendant of his constitutional rights." *Id*. at 13-15.

5

Defendant objects to Judge Williams's factual finding that Defendant "consented" to accompany the ICE officers to the Treasurer's Office conference room. *See* Objections at 2. Defendant also objects to two of Judge Williams's legal conclusions. First, Defendant objects to Judge Williams's finding that Defendant was not in custody when questioned by the ICE officers in the Treasurer's Office conference room. *Id*. Second, Defendant objects to Judge Williams's finding that "no *Miranda* warning was required" when Defendant was questioned during the administrative processing procedure at the ICE office. *Id*. at 2-3. The court shall address each objection in turn.

### *A. Consent*

Defendant objects to Judge Williams's factual finding that "Defendant consented to accompany the [ICE] officers" to the Treasurer's Office conference room. Report and Recommendation at 4. Defendant argues that he "acquiesced to a show of lawful authority, but that is not the same thing as 'consent.'" Brief in Support of Objections (docket no. 22-1) at 1.

When the ICE officers arrived at the Treasurer's Office, they made contact with Defendant. Neither officer touched Defendant, nor did they identify themselves as immigration or law enforcement officers. Officer Walker asked Defendant to accompany him to the conference room because he wanted to ask him a few questions. *See* Hearing Transcript at 33-34. Defendant agreed, and casually walked to the conference room with the ICE officers. *Id*. at 34. Officer Walker testified that he gestured toward the conference room and, using a normal tone of voice, said, "Please will you come with me." *Id*. at 49. Upon de novo review of the record, the court finds that Defendant did not "acquiesce[] to a show of lawful authority." Instead, all of the facts indicate that Defendant voluntarily accompanied the ICE officers to the conference room. Accordingly, the court shall overrule this objection.

Further, to the extent that Defendant is making a legal argument that he was in custody when the ICE officers asked him to accompany them to the conference room, Defendant has waived this argument due to his failure to raise it in the Motion. *See* Motion at 1-2; Brief in Support of Motion at 5-7; *see also United States v. Simeon*, 115 F. Supp. 3d 981, 996 (N.D. Iowa 2015) ("[W]hile the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits de novo review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise new arguments or issues before the district court that were not presented to the magistrate." (citing *Murr v. United States*, 200 F.3d 895, 902 n. 1 (6th Cir. 2000))).

### *B. Custody*

Defendant objects to Judge Williams's finding that "[D]efendant was not in custody while being question[ed] by the ICE officers in the Treasurer's Office." Report and Recommendation at 12. Defendant argues that the six factors outlined in *United States v. Griffin*, 922 F.2d 1343 (8th Cir. 1990) all weigh in "favor of custody, some heavily, and others slightly, but all point toward custody." Brief in Support of Objections at 10. Defendant further states that because he was in custody while being questioned in the Treasurer's Office, "[Miranda] [w]arnings were required" and "[s]tatements obtained in violation should be suppressed," including "that [the] Guatemalan identification card belonged to him, that he was from Guatemala, and that he was in the United States without permission." *Id*.

"The ultimate question in determining whether a person is in custody for purposes of *Miranda* is whether there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." *United States v. Perrin*, 659 F.3d 718, 719 (8th Cir. 2011) (quoting *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004)); *see United States v. Giboney*, 863 F.3d 1022, 1027 (8th Cir. 2017) ("The Fifth Amendment requires that *Miranda* warnings be given when a person is interrogated by law enforcement

after being taken into custody."). "To determine whether a suspect was in custody, we ask 'whether, given the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave or cause the agents to leave.'" *United States v. Laurita*, 821 F.3d 1020, 1024 (8th Cir. 2016) (quoting *United States v. Vinton*, 631 F.3d 476, 481 (8th Cir. 2011)). Relevant factors include:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

*Griffin*, 922 F.2d at 1349. These factors are not exhaustive. *Giboney*, 863 F.3d at 1027.

The first factor is "whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest." *Griffin*, 922 F.2d at 1349. During the encounter in the Treasurer's Office conference room, the ICE officers did not inform Defendant that the questioning was voluntary or that he was free to leave the conference room. Additionally, no ICE officer informed Defendant that he was not under arrest. However, the absence of such statements by officers is not dispositive. At no point did Defendant state that he no longer wished to speak with the ICE officers nor did he attempt to leave the conference room. Therefore, the court finds that this factor neither weighs in favor of finding that Defendant was in custody, nor against finding that Defendant was in custody.

8

The second factor is "whether the suspect possessed unrestrained freedom of movement during questioning." *Id*. The ICE officers did not "physically compel, handcuff, or otherwise restrain or touch [D]efendant." Report and Recommendation at 8. *See Laurita*, 821 F.3d at 1024 (concluding that the defendants' freedom of movement was not restrained to "the degree associated with formal arrest" (quoting *United States v. Williams*, 760 F.3d 811, 815 (8th Cir. 2014))); *Perrin*, 659 F.3d at 721 (finding that the defendant was not in custody where neither officer "prevented [the defendant] from exercising his right to leave—they did not physically restrain him, and nothing . . . suggests that they positioned themselves or acted to inhibit [the defendant's] exit"). The door to the conference room was closed, but there is no evidence that Defendant understood himself to be under arrest. Defendant asserts that "[t]he effect of closing [the] door [was] to limit the movement of the suspect" and that Defendant "would not have felt comfortable walking past law enforcement, opening the door and leaving under those circumstances." Brief in Support of Objections at 8.

Here, the ICE officers did not restrain Defendant's freedom of movement. Further, even though the door to the conference room was closed while the ICE officers questioned Defendant, this fact does not compel a finding that Defendant was in custody. *See United States v. Black Bear*, 422 F.3d 658, 662 (8th Cir. 2005) (finding that the defendant was not in custody during an interview because "[w]hile [he] did not have unrestrained freedom of movement during the interview because it occurred in a closed-door room in the police department, he nonetheless accompanied [the officer] to the room and was not handcuffed or restrained at any time during the interview").

Defendant also argues that he was not free to leave the conference room because Officer Walker testified that "[Defendant] was not free to leave." Hearing Transcript at 43; Brief in Support of Objections at 8. However, there is no evidence that this potential restriction was ever communicated to Defendant. This fact is significant "because the 'in

9

custody' inquiry focuses on 'objective circumstances, not on subjective views of the participants.'" *United States v. Castillo-Martinez*, 451 F. App'x 615, 619 (8th Cir. 2012) (quoting *United States v. Muhlenbruch*, 634 F.3d 987, 996 (8th Cir. 2011)); *see also Berkemer v. McCarty*, 468 U.S. 420, 442 (1984) ("A policeman's unarticulated plan has no bearing on the question [of] whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable [person] in the suspect's position would have understood his [or her] situation."). Officer Walker's belief that Defendant would not have been free to leave, which was not communicated to Defendant, does not render the encounter custodial. Therefore, the court finds that this factor does not weigh in favor of finding that Defendant was in custody.

The third factor is "whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions." *Griffin*, 922 F.2d at 1349. Here, the ICE officers initiated contact with Defendant. The ICE officers requested that Defendant accompany them to the conference room and Defendant voluntarily complied. Judge Williams found that "[D]efendant made the conscious decision to accompany the officers into the conference room" and "[D]efendant had no reason to believe that the choice was not fully his to make." Report and Recommendation at 9. Nevertheless, Judge Williams found that this factor "weigh[ed] in favor of finding that [D]efendant was in custody at the time of questioning." *Id*. The court agrees with Judge Williams and finds that this factor weighs slightly in favor of finding that Defendant was in custody.

The fourth factor is "whether strong arm tactics or deceptive stratagems were employed during questioning." *Griffin*, 922 F.2d at 1349. Here, the ICE officers arrived at the Treasurer's Office at approximately 9:00 a.m. and formally arrested Defendant at approximately 9:15 a.m. After locating Defendant and requesting that he accompany them to the conference room, Officer Walker asked Defendant the following questions: (1)

10

whether the Guatemalan identification card belonged him; (2) whether he was from Guatemala; and (3) whether he had permission to be in the United States. *See* Hearing Transcript at 34-35. Given the relatively short duration of the encounter, narrow line of inquiry and lack of any evidence of deception or strong-arm tatics, the court finds that this factor does not weigh in favor of finding that Defendant was in custody.

The fifth factor is "whether the atmosphere of the questioning was police dominated." *Griffin*, 922 F.2d at 1349. Here, there is no evidence that the atmosphere where the questioning occurred—the Treasurer's Office conference room—was dominated by law enforcement. There were two ICE officers present in the conference room during questioning. *See United States v. Axsom*, 289 F.3d 496, 502 (8th Cir. 2002) (concluding that the interview was not police dominated where, although nine federal agents were present in the suspect's home, only two agents conducted the interview). Further, the interaction took place at the Treasurer's Office, rather than in a police dominated environment. The Treasurer's Office is a public space. The encounter between Defendant and the ICE officers occurred during regular business hours. Other members of the public were present in the Treasurer's Office at the time of the encounter. *See United States v. Sanchez*, 676 F.3d 627, 631 (8th Cir. 2012) (finding that the interview was police dominated where "[i]t was held in a courthouse-basement office normally used by federal prosecutors" and the defendant "was isolated with two law enforcement officers in the small, closed interview room"). Additionally, the ICE officers bore no insignia of their office, wore plain clothes and their weapons were concealed. *See Axsom*, 289 F.3d at 502 (finding that the defendant was not in custody where the police officers did not display a threatening posture, display weapons or make a physical show of force during questioning). Therefore, the court finds that this factor does not weigh in favor of finding that Defendant was in custody.

The sixth factor is "whether the suspect was placed under arrest at the termination of the questioning." *Griffin*, 922 F.2d at 1349. After being questioned, Defendant was formally arrested by the ICE officers. The court finds that this factor weighs in favor of finding that Defendant was in custody.

In light of the above factors and considering the totality of the circumstances, the court finds that Defendant was not in custody while he was questioned in the Treasurer's Office conference room. The ICE officers asked defendant to accompany them to the conference room, which he did voluntarily. The ICE officers did not physically compel, handcuff, restrain or touch Defendant. The ICE officers did not use any deceptive or strong-arm tactics while questioning Defendant. Finally, the atmosphere of the questioning was not dominated by law enforcement. Based on the foregoing, the court finds that a reasonable person in Defendant's position would have felt free to terminate the questioning and leave. *See Laurita*, 821 F.3d at 1024. Furthermore, because Defendant was not in custody during the questioning in the Treasurer's Office conference room, the ICE officers were not required to inform Defendant of his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). *See United States v. Hatten*, 68 F.3d 257, 261 (8th Cir. 1995) (providing that "*Miranda* protections are triggered only when a defendant is both in custody and being interrogated."). Accordingly, the court shall overrule this objection.

### C. Miranda *Warning*

Defendant objects to Judge Williams's finding that "Officer Callison was not required to advise [D]efendant of his constitutional rights" under *Miranda* because "all of the questions Officer Callison asked [D]efendant were properly part of an administrative booking process in relation to immigration issues." Report and Recommendation at 14. Defendant argues that Officer Callison "had reason to believe that the information [illicited from Defendant] could be used against [him] in a subsequent criminal proceeding" and "all

statements obtained . . . at the ICE office should be suppressed." Brief in Support of Objections at 11.

The United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda*, the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. However, questions intended to illicit "routine biographical data [are] exempted from *Miranda*'s coverage." *United States v. Brown*, 101 F.3d 1272, 1274 (8th Cir. 1996); *see also United States v. Ochoa-Gonzalez*, 598 F.3d 1033, 1038 (8th Cir. 2010) (providing that "asking a routine booking question is not interrogation under *Miranda*"). Further,

> [a] request for routine information necessary for basic identification purposes is not interrogation under *Miranda*, even if the information turns out to be incriminating. Only if the government agent should reasonably be aware that the information sought, while merely for basic identification purposes in the usual case, is directly relevant to the substantive offense charged, will the question be subject to scrutiny.

*Brown*, 101 F.3d at 1274 (quoting *United States v. McLaughlin*, 777 F.2d 388, 391-92 (8th Cir. 1985)).

In this case, Defendant is charged with two immigration-related offenses, one count of unlawful use of identification documents and one count of misuse of a social security number. *See* Indictment at 1-2. The Indictment alleges that Defendant used the identification documents and social security number for employment purposes. *Id*.

Here, in the routine booking procedure at the ICE office, Officer Callison first removed Defendant's handcuffs and then took Defendant's fingerprints and photograph. Next, Officer Callison asked Defendant for biographical information, including general

13

questions regarding his medical history, family history and obligations and other similar background information. *See* Hearing Transcript at 53. Officer Callison testified that he did not ask Defendant any questions about criminal behavior or where Defendant had obtained the social security number. *Id*. at 53-54, 59. Further, Officer Callison testified that he did not ask Defendant for any information regarding whether Defendant used the social security number to obtain employment. *Id*. at 59. The court finds that the questions Officer Callison asked Defendant were properly part of the ICE administrative processing procedure. Officer Callison did not ask questions designed to elicit incriminating information from Defendant. Further, there is no evidence that Officer Callison knew that the questions he asked Defendant would elicit incriminating information related to the charges alleged in the Indictment. Under such circumstances, the court finds that Officer Callison was not required to advise Defendant of his *Miranda* rights. *See Brown*, 101 F.3d at 1274. Accordingly, the court shall overrule this objection.

## VI. CONCLUSION

In light of the foregoing, the court **ORDERS**:

(1) The Objections (docket no. 22) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 16) is **ADOPTED**;

(3) The Motion to Suppress (docket no. 10) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 11th day of October, 2018.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA